## Case No. 14,474.

### UNITED STATES v. ATKINS.

[1 Spr. 558;¹ 19 Law Rep. 95.]

District Court, D. Massachusetts. Sept., 1856.

BOUNTY—FISHING—PERJURY—INTENT TO DEFRAUD.

1. A vessel is not entitled to the fishing bounty, unless the fishermen are, by a written agreement, to share in the proceeds of the voyage.

2. Perjury, under the statute, may be either by swearing to a fact which the party knows is not true, or to his knowledge of a fact, when he has not knowledge.

[Disapproved in U. S. v. Moore, Case No. 15,803.]

3. Rash swearing, to what is not true, is not, necessarily, perjury.

4. An intent to defraud the government, is not a necessary element in this statute perjury.

¹ [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]

² [The defendant was put upon trial for obtaining the fishing bounty for the schooner Waldemar, of Provincetown, by making a false declaration in an oath, required by law, before the collector of Barnstable. The prosecution relied in this case upon the act of 1823. [3 Stat. 723], which provides that "if any person shall swear or affirm falsely, touching the expenditure of public money, he shall, upon conviction thereof, suffer as for wilful and corrupt perjury." The defendant, who was not interested in the vessel or voyage, undertook to obtain the bounty under a power of attorney from the owner, which authorized him to do all things lawful and necessary to obtain the bounty money. He produced to the collector a fishing agreement, drawn in legal form, and signed by the master and crew, and countersigned by the owner, and thereupon took and subscribed the oath before the collector, in which he swore as follows:—"I, Ruel Atkins, lawful agent of the schooner Waldemar, do solemnly swear, that the paper now produced by me, is the original agreement made between the owner, master and fishermen, of the schooner Waldemar, employed on board said vessel during the last fishing season," upon which the collector paid to him the bounty, $238, for which the defendant signed a receipt. It was proved by the collector that the oath was required and taken, and that he should not have paid the bounty unless this oath had been taken, or the papers produced as the true agreement. Two of the fishermen testified that they did not go on shares, but were hired by the master, at the rate of $27 and $24 a thousand, for each thousand fish they caught, and that there were but three sharesmen on board the vessel. They signed the printed agreement, on shares, at the request of the master, but it was not read to them, and they never agreed to go on shares. They were told by the master that there could be no more sharesmen, and he wanted men by the thousand catch. They received nothing from the bounty. It was contended by the counsel for the defendant, that to make out the offence of false swearing, it must be proved that the defendant swore to a falsehood, knowingly, with intent to defraud the United States, and that the defendant did not know of the fraud, but took the oath ignorantly, as a matter of course, believing that the agreement was genuine, and not with the intent to deceive the collector. The attorney for the United States, argued that this was not the common law offence of perjury, but a statute offence of swearing falsely. That ignorantly and deliberately swearing to a positive fact, which the defendant did not know of his own personal knowledge, was wilfully, falsely swearing. That he had knowledge that the agreement on shares was not the true agreement, be-

² [From 19 Law Rep. 95.]

cause the evidence showed, he must have known that the men were paid off before the voyage was settled, and the shares ascertained; and further, that when he swore positively to the agreement as the true agreement, he knew that he had no personal knowledge of the fact that it was the true agreement, and thereby deceived the collector, who relied on his positive oath to the fact, and paid the bounty. That the effect of the oath was to induce the collector to pay the bounty, by which the United States was defrauded, and the fishermen deprived of their share of the bounty, which the law designed for their benefit, and not for the owners and masters. who had thus obtained the whole of the bounty. That the expenditure of public money had thus been brought about by an oath, which was false in fact, and the defendant having acted deliberately in taking that oath, was liable for the consequences of his acts from which all the criminal intent necessary to constitute the statute offence, was to be legally inferred.] [2]

B. F. Hallett, U. S. Dist. Atty.
T. K. Lothrop. for defendant.

SPRAGUE, District Judge, in charging the jury as to the law, said that the statute did not allow the fishing bounty, unless, by the agreement under which the voyage was performed, the fishermen were severally to share in the bounty and proceeds of the voyage. That engaging a man for so much for every thousand fish caught by him, or hiring by the month or season, except the cook, was not a compliance with the requisitions of the law, and no vessel was entitled to bounty, where each fisherman did not have a share in the proceeds of the voyage, in proportion to the number of fish caught by him. It was necessary, in order to obtain the bounty, that after certain deductions from the proceeds of the fish, the residue should be divided among the fishermen according to the number of fish they had respectively taken, and that five-eighths of the bounty should be divided in the same proportion. And the owner, his agent or representative, must swear that such was the agreement, in order to get the bounty. But to make the offence perjury, under the statute, the jury must be satisfied that the defendant swore to a declaration which, at the time, he was aware was false. And that may be either by swearing to a fact which he knows is not true, or by swearing to his knowledge of the fact, when he knew he had no such knowledge. Rash swearing to what is not true. is not necessarily perjury; and the jury would inquire whether it was honestly done, or was done to deceive the officer and get the bounty by making a false declaration. If the prisoner had no intention of stating a falsehood to mislead, it was not the offence charged in the indictment. But it was not necessary, in order to constitute this offence, that the defendant should have intended to defraud the government, by obtaining the bounty for a vessel which he did not think had earned it. He might believe that the vessel had been employed the full time. with the requisite crew, under the proper agreement, and so was entitled to the bounty; and yet he might, under the statute, be guilty of the offence charged. by swearing falsely, as to documents not genuine, or allegations not true, to induce the collector to pay the bounty.

[The following report of Judge Sprague's charge is given in 19 Law Rep. 95]:

SPRAGUE, District Judge, in charging the jury, affirmed his former instructions to the same jury in the trial of David A. Smith, for perjury in a like case, and then referred to the law applicable more particularly to those guards upon which the attorney for the prosecution in the present case relied, under the act of 1823, as not perjury at common law, but the offence of false swearing created by the statute. The learned judge said that the allegation in the indictment is, that the defendant falsely swore that the fishermen's agreement produced by him to the collector, was the original agreement for the performance of the fishing voyage, when in fact it was not the original agreement. The fishermen testify that they were not engaged upon shares, but were hired for a specific time, to be paid for every thousand of fish caught by them during the voyage. If you believe them, the shipping paper upon which the defendant took the oath was not the actual agreement with the fishermen, and if they were hired as they have testified, the vessel would not be entitled to the allowance of bounty. because the law in that respect had not been complied with, and whoever knew that such was the fact. and was concerned in procuring the payment of the bounty. with that knowledge. participated in a fraud upon the United States.

But if a fraud was committed, was the defendant guilty of the offence of false swearing in order to obtain the bounty with which he is charged?

Was the oath which the defendant took when he obtained the bounty from the collector, false within the meaning of the law? That it was not the truth is apparent, but to make the defendant guilty of false swearing, it must have been intentionally false. It must be false as to him, and he must be proved to have been guilty of the intent to swear to a falsehood.

First—It is contended for the prosecution, that from all the evidence in the case the defendant must have known it was not the agreement.

Second—That he swore positively it was the agreement. when he was conscious that he did not know it was the agreement.

[2] [From 19 Law Rep. 95.]

These are d'stinct grounds, and if either is made out beyond a reasonable doubt, the offence charged has been committed. As to the first, did the defendant wilfully undertake to swear to that which he was well aware was untrue, and further did he do so for the purpose of deceiving the collector, in order to obtain the bounty? The motives and intent are to be drawn from the acts and declarations of the defendant. What were the facts? It does not appear that there was any communication between him and the owner, Crowell, who is deceased. The power of attorney to procure the bounty was given by Crowell to the defendant, who had no interest in the vessel. The defendant went to the collector with the fishing agreement drawn up for the division of the proceeds in shares, in the form required by law. That paper was signed by the master and fishermen and countersigned by the owner. Upon the back of it was the oath of the master of the vessel, taken before the deputy collector, that it was the actual contract with the fishermen. There was also the certificate of the inspector, made before the vessel sailed, that it was the agreement under which the voyage was to be performed. What other knowledge he had does not appear. It is said that any stranger who looked at the papers might have the same knowledge, and thereupon swear that the paper was the true agreement. The collector came to the conclusion that it was genuine, and administered the oath. He says that he relied upon that oath, and did not go behind it, but he also examined the papers, which all appeared to be genuine, and in the form required by law. From the whole evidence the jury will determine whether they are satisfied beyond reasonable doubt, that when the defendant swore it was the original agreement, he knew it was not the original agreement, and intentionally swore falsely.

The second ground taken by the attorney for the prosecution, is distinct from this, and I instruct you that it would be false swearing if the defendant swore that he had personal knowledge of a fact, when he had no such knowledge, and was conscious he had none, and also so swore to deceive the collector, and induce him to pay the bounty.

The form of the oath is positive. "I solemnly swear that the paper now produced by me, is the original agreement." Did the defendant by swearing positively mean to swear that he had personal knowledge that it was the original agreement? The defendant could not swear of his actual personal knowledge that it was the original agreement, unless he was present when it was made. All else would be information and hearsay. The question is, did he intend to make the collector understand that he had knowledge it was the original contract, or did he merely mean to swear that it was such to the best of his knowledge and belief? The matter for you to decide, gentlemen, is, whether you

are satisfied that the defendant, in order to deceive the collector, wilfully and intentionally swore to what he knew was false, either as to the agreement being genuine when he knew it was not, or to his knowledge of that fact when he was conscious he had no such knowledge.

The jury were kept together seven hours, and being unable to agree, were discharged.