## THE PEOPLE *v.* PELLOT.

### APPEAL from the District Court of Aguadilla.

No. 158.—Decided June 18, 1909.

CRIMINAL LAW—PERJURY—ELEMENTS ESSENTIAL TO THE CRIME—PROOFS.—It is not enough to show in a prosecution for perjury that the defendant made an oath alleging as true a fact that was shown to be false. It is necessary to prove also that the defendant knew that his statement was false, or that it was an unqualified statement of a fact which he did not know to be true, which statement, according to section 122 of the Penal Code, is equivalent to a statement of that which he knew to be false.

ID.—PERJURY—AGREEMENT OF THE EVIDENCE WITH THE INFORMATION.—A defendant accused of the perjury defined in section 117 of the Penal Code, cannot be convicted on evidence tending to show perjury as defined in section 122 of the same Code.

ID.—ERRONEOUS INSTRUCTIONS TO THE JURY.—In the case at bar the jury were given, among others, the following instructions: ''The unqualified statement of what one does not know to be true is equivalent to a statement of what one knows to be false,'' leaving it to the jury to infer that the proof of the unqualified statement was all that was necessary to convict. The court held that such instructions were contrary to law.

ID.—ERRONEOUS INSTRUCTIONS TO THE JURY—MALICE.—The instructions were erroneous in another respect because they failed altogether to take notice of the element of malice, inasmuch as a corrupt oath is necessary to the crime of perjury.

ID.—ERRONEOUS INSTRUCTIONS—ABSENCE OF EXCEPTIONS THERETO.—Where the instructions to the jury are erroneous, and no exception has been taken thereto, the case should not be reversed because of such instructions.

The facts are stated in the opinion.

*Mr. Manuel F. Rossy* for appellant.

*Mr. Rossy, fiscal,* for respondent.

MR. JUSTICE WOLF delivered the opinion of the court.

The defendant was convicted in the District Court of Aguadilla of the crime of perjury and appeals to this court. The information charged that the appellant while under oath to tell the truth, all the truth, and nothing but the truth, voluntarily and maliciously declared as true the material (*esencial*) fact that Miguel Concepción Ferreris should be excluded from the registration lists of the precinct because the latter had been away from the municipality (i. e. Aguadilla) for more than one year, knowing its falsity. The trial was had before a jury and the instructions of the court and a statement of the case came up with the record.

The facts shown by the prosecution at the trial were that Miguel Concepción Ferreris lived in Aguadilla in the months of June and July of 1908, his name being included in the registration list of 1906 in the ward of Camasellas and that in the month of July, 1908, he received a communication from the Board of Elections stating that an application had been made to them to take his name from the registration list. Whereupon he filed an affidavit that he had not given up his residence in Aguadilla but had always lived there and, as a consequence, his name was not stricken from the list and he voted at the last election.

It was shown that Ferreris generally worked at the Guánica Central during the sugar-grinding season but that at other times worked wherever he could get work, generally at Aguadilla. He was not married, but lived with his mother and brother, and that not only had he gone to the Guánica mill this year but that had been his practice for many years and that he, when there, stayed two, three, and at times, six months, sleeping on empty sacks. Ferreris also testified that he was at Guánica for the six months prior to

June of 1908. The fact of his being in Aguadilla during June and July of 1908 was proved by several witnesses who also testified that his residence was Aguadilla. Ferreris testified that he had known the defendant for a long time but that they did not live close together. The petition and affidavit of the appellant sworn to before the notary public, Carlos Franco Soto, was put in evidence. Therein Pellot prayed that Ferreris be stricken from the provisional list of inscriptions because the latter had been away from the municipality for more than a year.

The witnesses of the defense gave testimony principally to the effect that each of them had not seen Ferreris in Aguadilla for some time and one of them that she had not seen him for more than a year.

The testimony of the defense was unimportant because of its negative character, no attempt being made to show that they or any of them had any communication with the appellant about the absence of Ferreris. If anything, such testimony went to show the fact that the prosecution was aiming to prove, namely, that Ferreris had not been away for an entire year preceding the election. There was no evidence to contravert this fact.

We may consider as definitely proved that the appellant made an oath alleging as true a fact that was shown to be false. There is, however, another thing necessary to be proved in a prosecution for perjury, namely, either that the defendant knew his statement to be false or that it was an unqualified statement of what he did not know to be true; such unqualified statement according to section 122 of the Penal Code being equivalent to a statement of that which one knows to be false.

Under the information in this case it was necessary to prove that the appellant made the affidavit he did, knowing it to be false and that he did it wilfully. (*People* v. *Von Tiedeman,* 120 Cal., 128.) Sections 118 and 125 of the Penal Code

of that State are counterparts of sections 117 and 122 of our Penal Code. These sections provide that:

"Every person who, having taken an oath that he will testify, declare, depose, or certify truly before any competent tribunal, officer, or person, in any of the cases in which such an oath may by law be administered, wilfully and contrary to such oath, states as true any material matter which he knows to be false, is guilty of perjury. It is no defense to a prosecution for perjury that the oath was administered or taken in an irregular manner.

"An unqualified statement of that which one does not know to be true is equivalent to a statement of that which one knows to be false."

It is useless to urge that under section 122 it was sufficient to show that appellant made an unqualified statement of something he did not know to be true because the information charges that he knew his statement to be false. The *allegata* and the *probata* must correspond. The defendant had no notice that he was to be tried by virtue of section 122 of the Penal Code. The information follows almost literally the words of section 117.

No matter how carefully the evidence is reviewed it failed to disclose the slightest evidence that the appellant made his statement knowing it to be false. The instructions of the court tell the jury that if "the unqualified statement of what one does not know to be true is equivalent to a statement of what one knows to be false," leaving it to the jury to infer that the proof of the unqualified statement was all that was necessary to convict. It was error to instruct the jury in this manner, but in any event the evidence does not follow the information.

The instructions were erroneous in another respect because they fail altogether to take notice of the element of malice. A corrupt oath is necessary to the crime of perjury. (*People* v. *Tiedeman, supra,* and cases cited therein.) However, as no exception was taken to the charge we do not think the case should be reversed because of the instructions.

We do not think, moreover, that the proof shows any malice. The testimony of the prosecuting witness in itself shows that he was away at least half of the year and the testimony is absolutely consistent with an honest belief on the part of Pellot that Ferreris was away for the entire year.

For these reasons the sentence must be reversed and the case remanded for a new trial or further proceedings not inconsistent with this opinion.

*Reversed.*

Chief Justice Hernández and Justice Figueras concurred.

Mr. Justice MacLeary dissented.

Mr. Justice Del Toro took no part in the decision of this case.

DISSENTING OPINION OF MR. JUSTICE MACLEARY.

Not being able to agree with the judgment pronounced in this case by a majority, three, of my colleagues, and still less with the opinion rendered herein, I am compelled to dissent. So strong are my impressions that the judgment of the court below should be affirmed that I feel impelled to write an opinion expressing my reasons for such a view.

The defendant, Eladio Pellot, being convicted in the District Court of Aguadilla of the crime of perjury and sentenced to one year at hard labor in the penitentiary, took an appeal to this court; and the record was filed here on the 25th of February, 1909. The case was heard on the 5th of March following. Mr. Justice Wolf was the *ponente* and delivered the opinion of the court.

The information on which the proceedings were based reads as follows:

"In the name and by the authority of The People of Porto Rico. United States of America. The President of the United States, ss. *The People of Porto Rico* v. *Eladio Pellot.* In the District Court of Aguadilla, on the 19th of September, 1908. The prosecuting attorney files an information against Eladio Pellot for the crime of perjury

(felony), committed as follows: The said Eladio Pellot, on or about the 27th day of June, 1908, in the jurisdiction of Aguadilla, which is a part of the judicial district of the same name, voluntarily appeared before Carlos Franco Soto, a notary public of Porto Rico, authorized by law to administer oaths, and then and while he was under oath to tell the truth, the whole truth and nothing but the truth, he voluntarily and maliciously stated, as true, the material fact that Miguel Concepción Ferreris should be stricken from the provisional list of voters of the precinct on account of having been absent from the municipality for more than a year, the said Eladio Pellot knowing the said statement to be false. This fact is contrary to the law for such cases provided and against the peace and dignity of The People of Porto Rico. (Signed) Luis Campillo, District Attorney.''

The case was tried before a jury and, at the proper time, the court instructed the jury as follows:

''Gentlemen of the jury: The jury has heard the information of the prosecution; the jury has heard the defense of counsel for the accused; the jury has also heard all the evidence introduced by counsel for the defense and by the prosecution, and it is your duty to consider every proof, in order that you may be able to render a just and impartial verdict in accordance with the dictates of your conscience.

''With regard to the instructions which the court must give to the gentlemen of the jury as a means of information in matters of law, the court informs you, in the first place, that in every criminal prosecution the accused is presumed to be innocent so long as the contrary is not proven, and in case there should exist a well-founded or reasonable doubt, he must be acquitted.

''The court also informs you that the crime imputed to the accused is perjury; and that according to the criminal law 'every person who, having taken an oath that he will testify, declare, depose, or certify truly before any competent tribunal, officer, or person, in any of the cases in which such an oath may by law be administered, wilfully and contrary to such oath, states as true any material matter which he knows to be false, is guilty of perjury.'

''The court informs you likewise that 'an unqualified statement of that which one does not know to be true is equivalent to a statement of that which one knows to be false.'

''The court informs you, further, that in order to be an elector and to have the right to vote it is necessary, among other material

requisites, to have resided during one year next preceding the date of election (in the municipality where the election is held.)

"The court informs you also that for the purposes of the exercise of the right of voting, the residence of an unmarried man shall be the place in which he sleeps; and in case he should have no regular sleeping quarters his residence shall be in that place in which his daily occupations are performed.

"The court informs you, likewise, that the residence presupposes domicile, which can be changed only by the union of act and intent.

"The court informs you also, that the jurors are the sole, competent, exclusive and sovereign judges for the consideration of the facts and of the veracity of the witnesses who have testified in this place.

"The court informs you, further, that the fundamental point, the point of fact which the gentlemen of the jury must carefully consider in this case, is whether Miguel Concepción Ferreris one year prior to the date of the election resided in the municipal district of Aguadilla. If this fact should be fully proven according to the conscience of the gentlemen of the jury, then the duty of the jurors in this case will be to render a verdict of guilty against the accused for the reason that the latter testified under oath, that Miguel Concepción Ferreris had not lived one year prior to the election in the municipality of Aguadilla, if they are of the opinion that he knew that Miguel Concepción Ferreris during all this time had lived and resided in the town of Aguadilla. If, in view of the evidence which has been presented here at the trial, the jurors are of the opinion that these points of the information of the prosecution, to which I have just now referred, are fully proven beyond any well-founded or reasonable doubt; if they are of the opinion that this fact, which was stated by the accused under the sanctity of his oath, to wit: That Miguel Concepción Ferreris had been absent from the municipality of Aguadilla for more than a year, although he knew that said Miguel Concepción Ferreris during all this time had resided in the town of Aguadilla, then the jurors will have to render a verdict of guilty against the said man for the serious crime of perjury. But if, on the contrary, the jurors think that Miguel Concepción Ferreris has not resided in the town of Aguadilla, during the period of one year, prior to the date of the election, in that case, they will have to render a verdict of not guilty, in favor of the accused. At all events, if the gentlemen of the jury should have any well-founded or reasonable doubt in regard to the guilt of the accused, of the crime imputed to him by the prosecution, in that case, they will

have to render a verdict of not guilty, because the benefit of any doubt must be given to the accused.''

The jury found a verdict of guilty on the 10th of December, 1908. The accused in due time made a motion for a new trial, on the ground that the verdict of the jury was contrary to the law and the evidence; this motion, after oral argument, was overruled by the court.

On the 22d of December, 1908, the court pronounced the following sentence against the defendant, to wit:

''*Whereas,* The said Eladio Pellot was declared guilty of the crime of perjury, by a verdict of the jury pronounced in this district court on the 10th of December, 1908;

''*Whereas,* This court, by a decision of the same day, fixed the 14th instant for pronouncing the judgment in accordance with the aforesaid verdict;

''*Whereas,* The court, by virtue of a motion presented by counsel for the accused, requesting a new trial, postponed the rendering of the judgment which had been set for the 14th instant until the motion had been discussed;

''*Whereas,* After the motion had been discussed and after the oral arguments of the defense and of the prosecution had been heard, the court was of the opinion that there did not exist any data in the evidence that authorized a review of the facts controverted in this case, and that no legal provision had been violated, and therefore declared that there was no ground for granting a new trial, fixing the 22d of December, 1908, at nine o'clock in the morning, for pronouncing the judgment in this case;

''*Now, therefore,* On this 22d day of December, 1908, the accused being present in open court, he was asked by the court, if he had any legal cause to show why judgment should not be pronounced against him; and as the accused did not allege any sufficient reason to prevent the court from pronouncing said judgment, the court at once declared that it must condemn, and did condemn, the aforesaid Eladio Pellot to the penalty of one year imprisonment in the penitentiary, at hard labor and the payment of the costs of the proceedings; and it was ordered by the court, that the aforesaid Eladio Pellot be taken from this court of justice to the jail of this district, in order thence to be conducted with all possible speed, to the penitentiary of this Island,

where he shall be delivered to the warden of said penitentiary, and be confined therein at hard labor for the term of one year, to be reckoned from this date, discounting the time which he has been in jail from the moment when he was imprisoned, until judgment was pronounced against him; and the secretary of this court shall issue a copy of this judgment, and transmit the same to the warden of the penitentiary.''

The following statement of the case is found in the record to wit:

''Be it remembered that at the trial, which was held in this case, on the 10th day of December, 1908, and at which trial the Hon. Isidoro Soto Nussa presided, there took place the hearing of the evidence which was introduced by both parties, and which is stated as follows:

''*Carlos Franco Soto,* a witness for The People of Porto Rico, appears before the court and, after having been duly sworn, testifies that his name is Carlos Franco Soto, and that by profession he is a lawyer and a notary public; that in the month of July, 1908, he practiced his profession in Aguadilla; that the accused presented himself in his notarial office, and there produced to the witness an affidavit, relating to the elector, Miguel Concepción Ferreris; that the affidavit which was presented to him by Eladio Pellot, is the one which is exhibited to him, and that the signature authenticating the same, is the signature of the witness.

''*E. W. Keith,* a witness for The People of Porto Rico, appears before the court and, after having been duly sworn, testifies that his name is E. W. Keith; that in the month of July, 1908, he held the office of official superintendent of elections in Porto Rico; that the affidavit which is exhibited to him was received by the board of elections, on the 30th of June and marked with a sign, to indicate to the clerk, what should be done with it; that soon afterwards he handed the letter to clerk, in order that he might write a letter to Miguel Concepción Ferreris, a copy of which letter is here; that together with the letter he sent him a copy of the affidavit informing Concepción Ferreris that if he did not answer the affidavit within a certain date, his inscription would be excluded; that the latter, at the proper time, answered the letter, and for this reason, the exclusion did not take place; that he was not stricken from the list either, but that his name appeared in the list of voters for 1908.

''*Miguel Concepción Ferreris,* a witness for The People of Porto Rico, appears before the court and, after having been duly sworn, testifies that his name is Miguel Concepción Ferreris; that during the

months of June and July of the present year he resided in Aguadilla; that in the ward of Camasellas, he had figured as elector in the list of 1906; that in the month of July he had received a communication from the board of elections, informing him that a petition had been received by said board requesting the elimination of his name from the list of electors; that he received the aforesaid communication, and inclosed therewith, a sworn counter-statement which he signed and returned; that the counter-statement is the one which is exhibited to him; that it was authenticated by the notary public, Mr. Reichard; that the witness never ceased for any period of time to remain in his residence at Aguadilla; that the witness has always lived at Aguadilla.

"On being cross-examined by counsel for the accused the witness, Ferreris, testified that in the month of June he resided at Aguadilla— that is, in June, 1908; that the witness is in the habit of leaving Aguadilla, in order to go to work in the 'Central' at Guánica; but that he was here in the month of June; that in the month of May, he was in the 'Central' at Guánica; that it is customary for the witness to go to Guánica, during the months of the sugar-cane harvest, but that he comes and goes; that the witness goes to Guánica during all the months of the sugar-cane grinding season; that the last time be absented himself from Aguadilla was in the month of January, when he went to Guánica; but that he comes and goes frequently; that in December, 1907, he was in Aguadilla; that the sugar-cane grinding season began in the 'Central' at Guánica in the month of December; that in January he went to the said 'Central'; that while he was in the 'Central at Guánica, he slept in the sugar warehouse on sacks, because he has no family there; that he is a bachelor; that the witness slept here in Aguadilla, when he went to see his family, but soon afterwards he returned to the 'Central' at Guánica; that in regard to the place of his occupations, he works in Aguadilla and in the 'Central' at Guánica; that during the sugar-cane grinding season he is in the 'Central' and the rest of the time, in Aguadilla; that the witness, for many years, has worked in the 'Central' at Guánica during the sugar-cane grinding season; but that he comes and goes frequently, not only this year, but that he has done so for many years; that the witness resides in the town of Aguadilla; that he lives in the ward of 'El Tamarindo,' in Santa Barbara Street; that he has relatives here in Aguadilla; that in the year 1906 he lived in the ward of Camasellas; that in the year 1907, he moved to the ward of 'El Tamarindo'; that, at Aguadilla, he has his house, his home, his family; that when he comes here, he does not come for the purpose of remaining here for some time; but only to see his mother and his brother; that the place of his occupations, as workman, is here at 'La Marina

de Aguadilla'; that at Aguadilla he must have worked more, because he is from Aguadilla; that he does not stay away for more than one or two months; and then he comes to see his family; that he went to the 'Central' at Guánica for two or three months; but that he came to see his family, at the expiration of that time.

"On being questioned by the honorable judge, the witness, Ferreris, testifies that he is not married, that he has no family of his own—that is to say, that he has no wife, but that he has a son who is an orphan in so far as his mother is dead, but that the witness has never been married; that he is not married, but that he is a bachelor; that his father is dead, and that his mother lives in the ward of 'El Tamarindo'; that before living in the ward of 'El Tamarindo' he lived in 'La Cuesta,' in the ward of 'Caimital Alto'; that he has always lived together with his father and his mother; that he has registered his name in the year 1906, at the age of 27 years; that he has always lived with his family with his mother and his son; that his occupation is that of a day laborer; that he has also worked at 'La Marina'; because he is also a mariner; that he worked as day laborer and as a mariner, because nowadays anyone is a mariner, because there is no guild of mariners; that the witness is a mariner because he works at 'La Marina'; that he remembers that in the month of June, 1908, he was at Aguadilla; that on the 27th of June of this year, he was at Aguadilla; that before said month he had worked at the 'Central' at Guánica, and that he had worked in the said 'Central' for six months; that the place where the witness slept while he was there, was the sugar warehouse, so that the witness, six months prior to the month of June, was living at Guánica; that the place was the sugar warehouse; that during the other six months, besides those which he spent at Guánica, he lived at Aguadilla; that during the last year, he spent six months at Aguadilla, and the other six months he spent working in the 'Central' at Guánica, and during those six months, he used to come and go; that he has known the accused for a long time, from the time when he was a boy; that it is a long time since he has known him; that the accused does not live near the witness; that he has no intercourse with him; that the witness registered his name in Aguadilla.

"*Juan García Ducós,* a witness for The People of Porto Rico, appears before the court and, after having been duly sworn, testifies that his name is Juan García Ducós; that during the months of June and July of the present year, he resided in Aguadilla; that he knows the accused; that he knows Miguel Concepción Ferreris; that he knows for certain, that Miguel Concepción Ferreris was a citizen and resident of the town of Aguadilla, in the months of June and July of the year

1908; that he knows·this for certain, because he has had no notice to the effect that said Ferreris has moved his residence to another place; that the witness had connections with the said Miguel Concepción Ferreris, which were sufficiently intimate, in order that he might know whether he lived here or not; that the residence of Ferreris is here; but that he sometimes leaves and stays away for a week, and then returns to Aguadilla.

"On being cross-examined by counsel for the accused, the witness testified that he received news from Ferreris, because sometimes, when he was going to leave, he asked him for money; that on repeated occasions he received news from him; that Ferreris asked him for money before leaving; that by occupation, the witness is a journalist; that Ferreris did not work for him, in his (García Ducós') capacity as a journalist, but as a proprietor, as the witness is a property holder, and at times he needed him; that the residence of Ferreris is at Aguadilla; that he knows this for certain, because he has established his home at Aguadilla; that Ferreris is a bachelor, and that he lives in company with his mother, and has an open house; that it seems to the witness that the residence of Ferreris is at Aguadilla; that the witness knows that Ferreris was at Aguadilla in the month of May last; that without doubt he was also in Aguadilla in the month of April, because he saw him indiscriminately; that during the months of May and April his occupations were here in Aguadilla—that is to say, that Ferreris slept here during the said months; that he does not suppose so, but that he knows it for certain, for, if he sees him one day, and the next day he sees him again, and has no information to the effect that Ferreris has another house, then he must suppose that he sleeps here; that in April and May Ferreris resided here in Aguadilla; that every month, and since he has known Ferreris, he knows that he resides here in Aguadilla; that during the six months of this year—that is, from January until May of this year, 1908—he has seen Ferreris residing here in Aguadilla; that he has never had an employe; that he remembers that he did not employ Ferreris in the month of January, but that he remembers that he saw him here very often in the month of January; that he saw him several times and on many occasions; that he does not remember whether he saw Ferreris in December, 1907; that he has the positive conviction that Ferreris resided here during the last six months of last year; that no month elapsed without his seeing Ferreris; that during the last six months, he used to leave and to return; that during the last six months of the year 1907 he used to see Concepción Ferreris the same as during the first six months of this year, that he saw him in the same manner; that he knows that

one year prior to the elections, Miguel Concepción Ferreris had his residence here in Aguadilla; that he knows this because he has seen him; this reply is made to a question which is addressed to the witness by the honorable judge whom the witness continues to answer; that, for making this statement, he has the same reasons which he stated to the defense; so that the witness bases his statement, that Miguel Concepción Ferreris, during the year preceding the elections, had his residence here in Aguadilla, on the reasons already stated; that during all this time, Ferreris lived in the ward of 'El Tamarindo.'

"On being called by the honorable judge, the witness, Miguel Concepción Ferreris, appears again before the court, and testifies that his name was registered in the list of voters, and that he has given his vote.

"After the evidence of the witnesses for The People of Porto Rico had been heard, the honorable prosecuting attorney presented the documentary evidence, to which no objection was made by the defense. The documentary evidence consists of the affidavit of the accused, Eladio Pellot, requesting that Miguel Concepción Ferreris be stricken from the provisional list of voters of the precinct of Aguadilla, for having been absent from said municipality for over a year. This affidavit was made before the notary public, Carlos Franco Soto, under date of June 27, 1908. The second document presented by the district attorney is a letter, dated July 10, 1908, which was written at San Juan, by the superintendent of elections, Mr. E. W. Keith, and addressed to Miguel Concepción Ferreris, in order that he might answer the allegations contained in the affidavit, requesting his elimination from the list of voters, by means of a counter-affidavit, the blank form or model of which was inclosed in the letter, in order that, after having signed the same and sworn to its contents, he might present it to the Executive Council, not later than August 10 of said year 1908. And the third document is the counter-affidavit of Miguel Concepción Ferreris, in which he states under oath, that he has all the qualifications required by law, in order to exercise the right of voting. The said affidavit of the aforesaid Miguel Concepción Ferreris, was made before the notary public, Arturo Reichard, under date of July 22, 1908.

### EVIDENCE OF THE DEFENSE.

"*José Sanabia,* a witness for the defense, appears before the court and, after having been duly sworn, testifies that his name is José Sanabia, and that he lives in the ward of 'Caimital Bajo,' and knows Eladio Pellot and Miguel Concepción Ferreris; that he has known Miguel Concepción Ferreris since he was a small boy; that the occu-

pation of Ferreris, when at Aguadilla, consists in working in the warehouses as a day laborer; that he works at 'La Marina,' with Marián, or whoever may call him; that Ferreris also works in the 'Central' at Guánica; that he knows this, because Ferreris told him so; that he does not know whether Ferreris, prior to the month of June of this year, has been absent from Aguadilla; that the witness did not see Ferreris for a long time, at least for seven or eight months; that during those seven or eight months he was working in the 'Central' at Guánica, where he accidentally is at the present time; that he must spend more time at Guánica, than at Aguadilla; that for many years he has gone to Guánica, in order to work there, because at Guánica he gets higher wages, and he is an industrious man; that Guánica is the place where Ferreris used to work.

"On being questioned by the honorable judge, the witness testifies that he (the witness) is a citizen of Aguadilla; that he has resided in Aguadilla since he was born; that his age is 39 years; that for 39 years he has resided in Aguadilla; that he voted at the last elections.

"*Matilde Grajales,* a witness for the defense, appears before the court, and after having been duly sworn, testifies that he lives at Aguadilla, and that his name is Matilde Grajales; that he knows Eladio Pellot and Miguel Concepción Ferreris, whom he has known since he was a child; that Ferreris has not always lived at Aguadilla, because on other occasions, he has been absent from said town, for a long time; that he had not seen Ferreris in Aguadilla, for over a year, when the time of the elections was already near; that the witness was absent from Aguadilla, for some time, but that he has always lived there, that, last year, the witness was a month in Santo Demingo, but that he does not remember what month it was; that it seems to him it was in the year 1907; that, during the present year, he has not seen Miguel Concepción Ferreris here in Aguadilla; that in 1907 he saw Ferreris before the latter left; that the witness was not absent for more than a month.

"On questions addressed to him by the district attorney, the witness testifies that no friendship exists between him and Miguel Concepción Ferreris; that he does not visit his house; that all he speaks with him is 'good-bye,' 'good-bye,' and nothing else; that Miguel Concepción Ferreris is a day laborer, and that he works as a carrier or porter; that he has seen him working here in Aguadilla; that, last year, while he was here, he has seen him working; that he lived in the ward of 'Higuey'; that he does not know whether Ferreris resided in the ward of 'Camasellas'; that he cannot positively state

whether during the months of January, February, March, April and May of this year, he has constantly seen Miguel Concepción Ferreris; that he does not know whether the said Ferreris during those months was at Aguadilla or not.

"*Lorenzo Laguer,* a witness for the defense, appears before the court, and after having been duly sworn, testifies that his name is Lorenzo Laguer; that he lives in Nueva Street, and that he knows Eladio Pellot and Miguel Concepción Ferreris; that he has known Ferreris for a long time; that he has seen him living here in Aguadilla; that he does not see him any longer here in Aguadilla, when he goes to work in the 'Central' at Guánica; that he knows this, because he has been working together with him at Guánica; that the witness was there last year, after January, and at that time Ferreris was already in the 'Central' at Guánica; that Ferreris was there; that he does not know how long Ferreris has been there, because he does not know the date on which Ferreris went to Guánica; that he does not know whether he has been there for over a year; that when the witness arrived at Guánica, Ferreris was already there; that he did not inquire how long Ferreris had already been at Guánica.

"On being cross-examined by the honorable district attorney, the witness testifies that he is a citizen of Aguadilla, where he has his residence; that he is an elector; that he has voted at the last elections; that the witness has been working in the 'Central' at Guánica; that Miguel Concepción Ferreris went to Guánica and when the witness returned Ferreris returned with him.

"In answer to questions addressed to him by the defense, he testifies that, when he went to Guánica, Miguel Concepción Ferreris had already been there for some time.

"This statement was approved by the district judge, Hon. Isidoro Soto Nussa, on January 15, 1909."

On the filing of the record in this court very little further attention seems to have been paid to it by the appellant. He filed no brief although he was represented by counsel who made an oral argument; and so we are left to rely on this alone for his defense and must search the record for any further errors, technical or substantial, on which to allow him to escape. Perjury is a very serious crime and ought to be severely punished when properly proven; for the protection of society and in order to deter other evil disposed persons

from committing this offense and thus polluting the fountains of justice.

The *fiscal* on behalf of The People presented in his brief the following statement:

"From the record there does not appear any fundamental error which needs to be corrected; and the testimony of the witnesses for the prosecution shows clearly the guilt of the accused; so that, in our opinion, the testimony of the witnesses for the defense is not sufficient to serve as a basis for a petition, requesting that this honorable court reverse, modify, or annul the judgment rendered by the District Court of Aguadilla."

With this statement I heartily concur and will give some of the reasons, more at length, which induce me to believe that the judgment should be affirmed. In consideration of this, as well as every other criminal case, it is well to bear in mind the following general principles:

Every person charged with a crime is presumed to be innocent until he is proved to be guilty, by competent evidence; the charge against the defendant must be properly stated, in the accusation, so that the accused may readily and accurately know the nature of the offense which it is alleged that he has committed; all the proceedings at the trial must be conducted in his presence; the judge and the jury, who are required to pass upon his guilt or his innocence, should be entirely free from all prejudice, partiality or passion; the proof of his guilt must be so certain as to exclude every reasonable hypothesis of his innocence; and the accused must be proved to be guilty of the offense named beyond a reasonable doubt.

If all these principles have been correctly applied, in the trial of the accused, it may safely be held that no fundamental error has been committed by the trial court, and the judgment of conviction need not be disturbed.

I maintain that the charge of the court is entirely correct; but if there should appear any slight error we must remember

that no exception was taken thereto at the time, that the defendant's counsel offered to the court no instructions to be given to the jury nor did he object to the charge of the court as he had an opportunity to do not only on the trial but also on the motion for a new trial, which was argued orally by counsel.

In the case of Francisco Vega decided by this court a few days since, on May 27, it is said in the opinion that "inasmuch as the trial court gave to the jury all the instructions requested by the counsel for the defendant, and no exception was taken to any portion of the charge given to the jury by the court, any defect in the charge, which is in itself, as far as it goes, unobjectionable, would not be considered as a reversible error, if supported by sufficient evidence to establish the guilt of the accused."

An examination of the information in this case will show it to be in proper form. That is not questioned; but it is contended that the proof does not support the allegations of the accusation.

It will be found, by reference to the record, that the information states that the defendant, having been duly sworn to tell the truth, voluntarily and maliciously declared as true, the essential fact that Ferreris ought to be stricken from the list of voters, for having been without the municipality for more than a year, knowing its falsity—that is to say, the falsity of the statement made by him under oath.

Of course, whether or not the defendant knew that the declaration which he made and swore to was false can only be proved by the surrounding circumstances. All the facts in the record go to show that everybody else, almost, if not entirely, in the small town of Aguadilla, a place of about 7,000 people, knew that Ferreris had only gone to work at the Guánica Central, about 30 miles away, during the sugar-grinding season, as was his custom, and frequently visited his home where his mother and son and brother lived, and had

not abandoned his domicile there. He worked part of the time at Guánica Central and when there was no sugar grinding at the port in Aguadilla. He was a common laborer. No evidence was introduced to show that the defendant made any inquiry whatever as to the whereabouts of the voter, Ferreris, before making the affidavit by which he sought to deprive him of his vote. Had he visited the house where Ferreris' mother and family lived he could have easily learned all the facts. But it is contended in his behalf that the defendant merely made an unqualified statement which he did not know to be true. If he did not know it to be false it was his own fault for not making inquiries in regard to the residence of Ferreris. But it matters not. Our Penal Code, in order to prevent perjurers from escaping the punishment for such an odious crime, and one which is so difficult to prove, has provided that, "an unqualified statement of that which one does not know to be true is equivalent to a statement of that which one knows to be false." (Sec. 122 of the Penal Code.) This is a rule of evidence particularly applicable to trials for perjury. And it means the same thing as if it is said that, on such trials, if it is proven that the accused made an unqualified statement of what he did not know to be true it is the same as to prove that he made a statement of what he knew to be false; and he is guilty of perjury. Section 122 is not intended to be a part of the definition of the crime of perjury, which is defined in section 117 of the same Code. The information in every case of perjury is and should be drawn under section 117; but when it comes to the trial the proof can be made by showing that the accused has made a false statement "knowing the same to be false," or has made "an unqualified statement of that which he does not know to be true." (*People* v. *Von Tiedeman,* 120 Cal., 129, 3d par. of syllabus.) And this is perfectly logical for it amounts to the same thing, when one has made a positive and false statement under oath, whether he knows it to be false or does not know it to be true. If either is proved the information is satisfied and courts must hold the

*allegata* and *probata* to correspond. To hold otherwise is to split straws and make loopholes through which the guilty perjurer can escape the meshes of the law. The case of *The People* v. *Von Tiedeman,* in 120 Cal., 128, supports and does not militate against this view; and if it did it would not be well founded in reason and should not be blindly followed. The case of Von Tiedeman, when carefully read and analyzed will be found to turn on an erroneous charge of the judge to the jury, which the case at bar cannot do, and the Supreme Court of California in reversing the judgment in that case in effect says:

"There can be no wilfull crime of perjury, where the witness is honestly mistaken in his testimony, or the oath is according to the belief and conviction of the witness as to its truth; and it seems that even a reckless disregard of truth by a witness, who has no belief that he is swearing falsely, is not perjury, though his testimony is in fact false, and he would have made it true if he had used caution." (*People* v. *Von Tiedman,* 120 Cal. Rep., 128.)

A distinguished text-writer, in a recent treatise on crimes, in commenting on the evidence necessary to support a charge of perjury, says in regard to the statement which the accused is declared to have made under oath, that

"The testimony must be false, or believed to be false, or the witness must not know whether it is true or false. A person may commit perjury either by swearing to a fact which he knows is not true, or by swearing to his knowledge or belief as to a fact, when he has no such knowledge or belief." Citing in support of this proposition the following cases: *Rex* v. *Pedley,* 1 Leach, C. C., 325; *Reg.* v. *Schlesinger,* 10 Q. B., 670; 2 Cox, C. C., 200; *U. S.* v. *Atkins,* 1 Sprague, 558, Fed. Cas., No. 14474. Clark on Crimes, pp. 654 and 656.)

Other elementary writers might be quoted to the same effect, and the list of cases could be indefinitely extended.

While not wishing to prolong these remarks to a great length, I cannot forbear quoting from a very able opinion

rendered by the Supreme Court of Illinois. The language
used is apt and forcible and reads as follows:

"But the jury, in determining the fairness and honesty of that
belief, were bound to look to all of the evidence showing the circum-
stances under which the oath was taken. If from the evidence it
appeared that a reasonable man could not have held an honest belief
of a *bona fide* residence, then they would be compelled to find the
oath false and that he intended to swear falsely. A man cannot cor-
ruptly swear falsely and shield himself from the penalty of perjury
by stating in his affidavit that he believes his statement to be true, nor
can he escape by showing slight facts which are insufficient to create
a reasonable belief. If, on the consideration of all the evidence, the
jury believe that it was only a pretense that he believed statements
of others, which are contradicted by other circumstances, they should
give no weight to such pretenses. A person has no right to act reck-
lessly, shut his eyes to facts and evidence and wholly ignore them, and
then escape the consequences of his reckless disregard of truth by
pretense that trifling facts, improbable statements of others, and
evidence that could convince no one, had led him to believe that his
statements are true.

"All know that we cannot look into and inspect the mind of an-
other, but we can judge of his motives by his acts. And it is true
that this is a crime hard to establish, but the motives may be estab-
lished by the circumstances under which the accused takes the oath.
On the truth or falsehood of evidence all our rights depend. Hence
the crime of perjury has been denounced as the most infamous and
detestable. Persons may guard and protect themselves against most
other crimes, but against this they have and can have no security.
And to permit persons to escape on a mere pretense that they believed
the false statements is highly calculated to subject all classes of per-
sons to the most grievous wrongs. The belief of the accused should
be reasonable, and not capricious and wilfully entertained without
reasonably fair evidence upon which it may be based." (*Johnson* v.
*The People*, 94 Ill., 513 and 514.)

If that distinguished court had had this case before it,
the judge writing the opinion could not have used language
more directly applicable. The recklessness with which the
false oath was taken by the defendant, the improbability of
his being ignorant of the falsity of the statement solemnly

made by him, the necessity of inferring a man's motives from his acts, the propriety of taking malice to be proven by the surrounding circumstances, and the public peril of laxity on the part of courts in the punishment of perjury, are all touched on with the hand of a master of jurisprudence. We can safely follow this path marked out for us in this well-fought field of criminal law.

A judge of a Federal Court sustains the same view in a charge to the jury in a case involving a false affidavit made to deceive a collector of revenue. In part the charge reads:

"And the owner, his agent or representative, must swear that such was the agreement, in order to get the bounty. But to make the offense perjury, under the statute, the jury must be satisfied that the defendant swore to a declaration which, at the time, he was aware was false. And that may be either by swearing to a fact which he knows is not true, or by swearing to his knowledge of the fact, when he knew he had no such konwledge." (*United States v. Atkins,* case No. 14474, Fed. Cases.)

If the trial judge in this case had thus charged the jury it would have been a principle of law sound in the abstract, and though it might not have met the approval of this court it would have been indorsed by other courts quite famous for learning and ability.

Another Federal judge, in commenting on the charge in the Atkins case, says in approval of the same that:

"The question is: 'Did he mean to make the collector understand that he had knowledge that it was the original contract, or did he merely mean to swear that it was such to the best of his knowledge and belief?' The matter for you to decide, gentlemen, is, whether you are satisfied that the defendant, in order to deceive the collector, wilfully and intentionally swore to what he knew was false, either as to the agreement being genuine, when he knew it was not, or to his knowledge of the fact, when he was conscious he had no such knowledge." (*United States* v. *Moore,* case No. 15803, Fed. Cases.)

Thus we see that the Federal judiciary holds the same views with the State courts on this question of what is necessary to prove the crime of perjury.

But if the charge of the court should be carefully examined it will be seen that this case turns altogether on section 117 of the Penal Code, and that section 122 has no application to the matter in hand; and, moreover, a careful examination of the statement of the case will show that the evidence is ample to sustain the conviction, on the ground that the defendant wilfully and maliciously made a false statement, in regard to a material matter, which he knew at the time to be false. The prosecuting witness had known the accused since boyhood, though they were not intimate friends. The court judicially knows that Aguadilla is a very small town, having only about 1,400 voters; and that necessarily any person who has resided there long enough to be a voter must know nearly every other voter; and that the residence of any voter is quite easily ascertained; and an honest mistake in regard to the matter is scarcely possible.

The facts proven on the trial abundantly show malice. Every man is presumed to know the evil consequences of his own acts, and to intend that the natural consequences shall result therefrom. And what motive but a malicious one could influence a casual acquaintance to intermeddle in the affairs of a citizen, and, without the slightest inquiry, of his own accord to go before a notary public, and make a solemn oath that his neighbor had abandoned his residence in his native town and gone to make his home elsewhere? The only object must have been to deprive the absent one of his vote and thus increase the strength of the political party to which the accused belonged. Does proof that Ferreris was away working half the year justify a false affidavit that he was absent an entire year, and had lost domicile in Aguadilla? To so hold would be preposterous. The statement of the case certainly does not

show a total lack of evidence or even such a dearth of evidence as to lead any person to even suspect that the jury could have been influenced by any improper motive. And the only reason that any person perusing the history of this case can find for guessing that there might possibly be a conflict in the evidence is the fact that there is difference of opinion among the members of this court. Careful study of the statement of the case would dispel any doubts on these questions. But suppose there could be found any conflict, in the absence of a total lack of evidence, the judgment must be affirmed as we have repeatedly declared in numerous decisions, a few of which will be mentioned.

With regard to the consideration which should be given to the decision of the trial court on questions of fact, substantially the same rule prevails in civil and criminal cases. Mr. Justice Wolf, of this court, in the civil case of *Zalduondo* v. *Sánchez*, decided on April 20 last, says: ''Where there is a substantial conflict in the testimony, the findings of the lower court must be presumed to be correct, in the absence of passion, prejudice or some other undue motive.''

This is virtually in line with the decisions of this court in several criminal cases, among others, those noted in the following paragraphs:

In the case of *The People* v. *Díaz* (*Leña Verde*), decided on March 6, 1907, the writer delivered the opinion of the court and says:

''It may be said to be the rule established by the decisions that a judgment in a criminal case will not be disturbed on the ground that the verdict is not supported by the evidence, except in cases where there is a total failure of evidence, or it is so weak and unsatisfactory that the necessary inference to be drawn therefrom is that the verdict is the result of partiality, passion or prejudice.''

Again on June 27, 1907, this court, speaking through Mr. Justice Wolf, in the case of *People* v. *Sinigaglia*,

announced substantially the same proposition, using the following words: ·

"Few convictions could stand if they were to fail because of contradictory evidence. It is the province of the judge or the jury who try the case to pass upon the contradictions in the evidence and the credibility of the witnesses. This is a dry record before us, but in the court below, with the vitalizing effect of the presence of the witnesses, who can say but that such contradiction as exists in the record was greatly minimized. But mere contradiction in the proof is not enough to permit an appellate court to reverse a sentence."

Again the same justice in the opinion rendered by him, in the case of *The People* v. *Ramos,* on May 29, 1908, confirms this doctrine in the language following:

"In the bill of exceptions, which has been duly certified to, there is a strong conflict of evidence on several points, namely, whether the property belonged to the complaining witness or to the defendant; likewise as to whether the defendant used any real violence. There is, however, nothing in the record which shows that the court below was actuated by passion or prejudice in pronouncing judgment against the defendant or any other improper motive and in the absence of any such showing, as there is a conflict of evidence, we must, in accordance with the principles frequently announced by this court, hold that the court below is in the best position to pass upon disputed questions of fact, and the judgment sentencing the prisoner to a fine of $20 must therefore be affirmed."

And quite recently, on May 27 last, the writer, speaking for the court, in the murder case of *People* v. *Vega,* approved the former cases and announced the doctrine as follows:

"There is no other ground alleged on appeal for a reversal except that the evidence introduced does not justify the verdict and judgment rendered. Can we reverse the judgment on this ground? Of course, should there be found in the record a total failure of evidence, or if the same appears to be so weak and unsatisfactory that it must be necessarily inferred therefrom that the jury, in finding their verdict, were influenced by passion, partiality, prejudice or other improper motive, this court would not hesitate to reverse any judgment based

on such a verdict. But otherwise the verdict of the jury, when approved by the trial court and a judgment is rendered thereon, will not ordinarily be disturbed by an appellate court.''

On a careful review of all the evidence, we have searched in vain for any reasonable doubt, arising from the facts proven, of the guilt of the defendant. None such appears from the statement of facts. But the evidence is ample to sustain the conviction; the charge of the court is correct beyond all criticism, and if it were not, no objection was raised to it in the court below, and it should stand; the information is correctly drawn, and no exception was taken thereto. Justice has been done and the guilty man should be punished for his perjury.